1  Tina Wolfson, SBN 174806
   twolfson@ahdootwolfson.com
2  Paul Kerkorian, SBN 148825
   pkerkorian@ahdootwolfson.com
3  **AHDOOT & WOLFSON, PC**
4  1016 Palm Avenue
   West Hollywood, California 90069
5  Tel: 310-474-9111; Fax: 310-474-8585

6  Nick Suciu III (*Pro Hac Vice* Application
   Forthcoming)
7  nicksuciu@bmslawyers.com
8  **BARBAT, MANSOUR & SUCIU PLLC**
   434 West Alexandrine #101
9  Detroit, Michigan 48201
   Tel: (313) 303-3472
10

11 Counsel for Plaintiff,
   Todd Smith

   Joseph J. Siprut (*Pro Hac Vice* Application
   Forthcoming)
   jsiprut@siprut.com
   **SIPRUT PC**
   17 North State Street, Suite 1600
   Chicago, Illinois 60602
   Tel: 312.236.0000; Fax: 312.878.1342

12                    **UNITED STATES DISTRICT COURT**

13                    **EASTERN DISTRICT OF CALIFORNIA**

14

15 TODD SMITH, individually and on behalf of all    Case No.
   others similarly situated,
16                                                   **CLASS ACTION COMPLAINT**
                         Plaintiff,
17                                                   JURY TRIAL DEMANDED
          v.
18                                                   **1. Violations of California Consumers Legal
   ALLMAX NUTRITION, INC.; and                          Remedies Act, Cal. Civ. Code § 1750, *et seq.***
19 HBS INTERNATIONAL CORP.,
   Canadian corporations,                           **2. Violations of California False Advertising
20                                                      Law, Cal. Bus. & Prof. Code § 17500, *et seq.***
                         Defendants.
21                                                   **3. Violation of California Unfair Competition
                                                        Law, Cal. Bus. & Prof. Code § 17200, *et seq.***
22

23                                                   **4. Unjust Enrichment**

24                                                   **5. Breach of Express Warranty**

25

26

27

28

_____
                         CLASS ACTION COMPLAINT

Plaintiff Todd Smith ("Plaintiff"), on behalf of himself and all others similarly situated, through his undersigned attorneys, state as follows for his Class Action Complaint and Jury Demand against Defendants Allmax Nutrition, Inc. ("Allmax") and HBS International Corp ("HBS"):

## NATURE OF THIS ACTION

1.      This is a consumer class action brought by Plaintiff on behalf of himself and all others similarly situated who purchased the dietary supplement Allmax Nutrition Isoflex (the "Products") from Defendants.

2.      Defendants engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Products on the Products' labeling, and were unjustly enriched.

## PARTIES

3.      Plaintiff is a resident of Fresno, California who purchased the Products from the Vitamin Shoppe, a retail store located in Fresno, California.

4.      Defendant Allmax Nutrition, Inc. ("Allmax") is a Canadian corporation with its principal place of business in Toronto, Ontario.  Allmax is a supplier of bodybuilding and sports nutrition supplements in the United States and Canada.

5.      Defendants HBS International Corp. ("HBS") is a Canadian corporation with its principal place of business in Toronto, Ontario.  HBS also maintains an office in Carson City, Nevada. Upon information and belief, HBS is a wholly-owned subsidiary of Allmax and distributes Allmax's line of products in the United States and Canada for purchase at a variety of retailers.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because the combined claims of the proposed class members exceed $5,000,000 and because Defendants are Canadian citizens, whereas as Plaintiff and Class members are United States citizens.

7.      This Court has personal jurisdiction over Defendants because they have personally availed themselves of the benefits and protections afforded by California law by marketing and distributing the Products for sale to consumers within this District.

8.      Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a

CLASS ACTION COMPLAINT

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

### GENERAL ALLEGATIONS

9.      Sales of whey protein products are expected to grow 62% to reach U.S. $7.8 billion in 2018.[1] However, due to the high level of competition in the market and the escalating price of wholesale whey protein, sellers' profit margins are slim.

10.     In such a competitive business environment, Defendants make an effort to differentiate the Products by including added complexes that make false claims to entice consumers to choose the Products over competitors' products.

11.     Defendants designed, manufactured, warranted, advertised and sold the Products throughout the United States, and continue to do so.

### Defendants' Misleading Labeling of the Products

12.     Due to the highly competitive protein supplement industry, Defendants make false claims about the Products to differentiate them from competing protein products.

13.     Defendants misled the Plaintiff and Class Members by stating that the Products contain two complexes, NOS Complex and Glutamine Complex:

---

[1] *Available at* http://www.euromonitor.com/sports-nutrition-in-the-us/report (Last visited May 14, 2015).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25    14.    The "NOS-Complex" is allegedly supposed to contain the free-form amino acids L-

26  Arginine and L-Taurine.  However, after scientific testing, the Products do not contain either of these

27  free-form amino acids.  The "Glutamine Complex" is allegedly supposed to contain the free-form

28  amino acid L-Glutamine.  However, after scientific testing, the Products do not contain the free form

CLASS ACTION COMPLAINT

amino acid L-Glutamine.  See **Exhibit A**.

15.     The Products have the statement "Contains L-Arginine and Taurine."  Designed to increase blood flow, increase nitrogen levels, and increase protein delivery."  Because Isoflex does not contain these free-form amino acids, these label claims are false and misleading.

16.     The Products also have the statement "Free-Form L-Glutamine Designed to improve recovery and immune support."  Because the Products do not contain the free-form amino acid L-Glutamine, this label claim is false and misleading.

17.     Defendants' claim – "Contains L-Arginine and Taurine.  Designed to increase blood flow, increase nitrogen levels, and increase protein delivery" – regarding the NOS Complex is false due to the lack of claimed ingredients:

CLASS ACTION COMPLAINT

18.     Defendants' claim – "Free-Form L-Glutamine Designed to improve recovery and immune support" – regarding the Glutamine Complex is also false due to the lack of claimed ingredients.

19.     Even if there were L-Glutamine added to the Products, which there is not, the claims regarding this complex would still be false and misleading.

20.     "Recovery" in bodybuilding is the process of the trained muscles to recuperate and grow after resistance training.  This process enables the body to undergo muscle growth.

21.     In one study, Glutamine failed to affect muscle protein kinetics of the subjects.[2]

22.     Another study in healthy humans, glutamine was continuously infused for 2.5 hours at a rate corresponding to 0.4 grams/kg and revealed that glutamine provision did neither stimulate muscle protein synthesis.[3]

23.     There is a study that investigated the effect of L-glutamine supplementation on the plasma and muscle tissue glutamine concentrations of exercise-trained rats immediately and three hours after a single exercise session until exhaustion.  Rats were subjected to 60 minutes of swimming exercise daily for six weeks.  During the final three weeks, one group was given a daily dose of L-glutamine (1 gram/kg).  The plasma and muscle glutamine levels were higher than placebo during the post-exhaustive recovery period; however, this increase had no effect on exercise swim test to exhaustion performance, suggesting that elevations in plasma and muscle glutamine levels have no benefit on muscle performance.[4]

24.     A study was conducted to assess the effect of oral glutamine supplementation combined with resistance training in young adults.  Subjects received either placebo (0.9 grams/kg fat-free mass/day of maltodextrin) or L-glutamine (0.9 grams/kg fat-free mass/day) during six weeks of resistance training.  Results showed that muscle strength and torque, fat-free mass, and urinary 3-

---

[2] Gore D, Wolfe R. Glutamine supplementation fails to affect muscle protein kinetics in critically ill patients. *JPEN J Parenter Enteral Nutr*, 2002, 26:342-49.
[3] Svanberg E, Moller-Loswick A, Matthews D, Korner U, Lundholm K. The effect of glutamine on protein balance and amino acid flux across arm and leg tissues in healthy volunteers. *Clin Physiol*, 2001, 4:478-89.
[4] Rogero M, Tirapequi J Pedrose R, Castro I, Pires I. Effect of alanyl-glutamine supplementation on plasma and tissue glutamine concentrations in rats submitted to exhaustive exercise. *Nutrition*, 2006, 22:564-71.

CLASS ACTION COMPLAINT

methyl histidine (a marker of muscle protein degradation) all significantly increased with training, but were not different between groups. This study demonstrated that L-glutamine supplementation during resistance training had no significant effect on muscle performance, body composition, or muscle protein degradation in young healthy adults.[5]

25.    A study was performed to examine the effects of a combination of effervescent creatine, ribose, and glutamine on muscle strength, endurance, and body composition in resistance-trained men. Subjects performed resistance training while ingesting either placebo or the experimental supplement (5 grams of creatine, 3 grams of glutamine, and 2 grams ribose), for eight weeks. Both groups significantly improved muscle strength and endurance and fat-free mass, yet groups were not significantly different from one another. Therefore, the experimental supplement, which included glutamine, was no more effective than placebo in improving skeletal muscle adaptation to resistance training.[6]

26.    Another study sought to determine the effects of eight weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. Subjects were randomly assigned to receive either placebo for eight weeks, creatine monohydrate (0.3 grams/kg/day for one week and then 0.03 grams/kg/day for seven weeks) or the same dose of creatine in addition to 4 grams of glutamine/day while engaged in a resistance training program. Body mass and fat-free mass increased in the creatine and creatine + glutamine groups at a greater rate than with placebo. Additionally, the two experimental groups underwent a significantly greater improvement in the initial rate of muscle power production compared to placebo. These results suggest that the creatine and creatine + glutamine groups were equally effective in producing skeletal adaptation to resistance training and that glutamine apparently had no preferential effect in augmenting the results.[7]

[5] Candow D, Chilibeck P, Burke D, Davison K, Smith-Palmer T. Effect of glutamine supplementation combined with resistance training in young adults. *Eur J Appl Physiol*, 2001, 86:142-49.
[6] Falk D, Heelan K, Thyfault J, Koch A. Effects of effervescent creatine, ribose, and glutamine supplementation on muscle strength, muscular endurance, and body composition. *J Strength Cond Res*, 2003, 17:810-16.
[7] Lehmkuhl M, Malone M, Justice B, Trone G, Pistilli E, Vinci D, Haff E, Kilgore L, Haff G. The effects of 8 weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. *J Strength Cond Res*, 2003, 17:425-38.

7

27.    A study was performed to determine if high-dose glutamine ingestion affected weightlifting performance.  In a double-blind, placebo-controlled, crossover study resistance-trained men performed weightlifting exercises one hour after ingesting placebo (calorie-free fruit juice) or glutamine (0.3 g/kg) mixed with calorie-free fruit juice.  Results demonstrated no significant differences in weightlifting performance (maximal repetitions on the bench press and leg press exercises), indicating that the short-term ingestion of glutamine did not enhance weightlifting performance in resistance-trained men.[8]

28.    Similarly, a study sought to determine whether glutamine ingestion influenced acid-base balance and improved high-intensity exercise performance.  Trained males performed five exercise bouts on a cycle ergometer at 100% of VO2 peak.  The first four bouts were 60 seconds in duration, while the fifth bout was continued to fatigue.  Each bout was separated by 60 seconds of recovery.  The exercise bouts were initiated 90 minutes after ingesting either placebo or 0.3 grams/kg of glutamine.  Results showed that blood pH, bicarbonate, and lactate, along with time to fatigue, were not significant different between supplement conditions indicating that the acute ingestion of L-glutamine did not enhance either buffering potential or high-intensity exercise performance in trained males.[9]

29.    Another study determined whether oral glutamine, alone or in combination with hyperoxia, influenced oxidative metabolism and cycle time-trial performance in men.  Subjects ingested either placebo or 0.125 grams/kg of glutamine one hour before completing a brief high-intensity time-trial (approximately four minutes in duration).  Results indicated no significant difference in pulmonary oxygen uptake during the exercise test, thereby indicating no effect of glutamine ingestion either alone or in combination with hyperoxia, and thus no limiting effect of the tricarboxylic acid intermediate pool size, on oxidative metabolism and performance during exercise.[10]

---

[8] Antonio J, Sanders M, Kalman D, Woodgate D, Street C. The effects of high-dose glutamine ingestion on weightlifting performance. *J Strength Cond Res*, 2002, 16:157-60.
[9] Haub M, Potteiger J, Nau K, Webster M, Zebas C. Acute L-glutamine ingestion does not improve maximal effort exercise. *J Sports Med Phys Fitness*, 1998, 38:240-44.
[10] Marwood S, Botwell J. No effect of glutamine supplementation and hyperoxia on oxidative metabolism and performance during high-intensity exercise. *J Sports Sci*, 2008, 26:1081-90.

CLASS ACTION COMPLAINT

30.     In a consensus statement in 2011, it did not recommend L-glutamine supplements for sports and exercise.[11]

31.     Also, Defendants' claim regarding Glutamine improving immunity has also been shown to be false.

32.     A study showed that it was determined that oral glutamine supplementation did not have any effect on blood leukocyte or lymphocyte counts (indicators of immunity support).[12]

33.     Another study concluded that, although the glutamine hypothesis may explain immunodepression related to other stressful conditions such as trauma and burn, plasma glutamine concentration is not likely to play a mechanistic role in exercise-induced immunodepression.[13]

34.     Defendants also claim that the Product contains 4617 mg of Glutamine, however, the Product does not contain any Glutamine, but rather its closely related chemical cousin Glutamic Acid:

[11] Walsh NP, Gleeson M, Pyne DB, Nieman DC, Dhabhar FS, Shephard RJ, Oliver SJ, Bermon S, Kajeniene A. Position statement. Part two: maintaining immune health. *Exerc Immunol Rev.* 2011;17:64–103.

[12] Yalcin SS, et al.  Effect of glutamine supplementation on lymphocyte subsets in children with acute diarrhea. *Turk J Pediatr.* 2010 May-Jun;52(3): 262-6.

[13] Hiscock N, Pedersen BK. Exercise-induced immunodepression– plasma glutamine is not the link. *J Appl Physiol.* 2002;93:813–822.

CLASS ACTION COMPLAINT

35.     Defendants used the above-referenced statements when they marketed, advertised, and promoted the Products on their website and in other materials, and continue to do so.

36.     Defendants' labeling, marketing, and advertising of the Products causes real harm to consumers who are looking for added features to their whey protein product.

37.     The difference between the products Defendants expressly and/or implicitly purport to deliver and the Products actually delivered is significant.  The amount of added compounds provided by the Products directly affects its value to reasonable consumers.  Because of Defendants' practices,

CLASS ACTION COMPLAINT

such consumers are misled and deceived into paying an inflated price for Defendants' Products.

38.     The FDA promulgated regulations for compliance with the FDCA and DSHEA at 21 C.F.R. 101, *et seq*.   These regulations require all ingredients to be listed on the label of dietary supplements sold to the public. 21 C.F.R. 101.4.

39.     Defendants' deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

40.     California prohibits the misbranding of food in a way which parallels the FDCA through the "Sherman Law", Cal. Health & Saf. Code § 109875, *et seq*.   The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

41.     The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

42.     Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

43.     Further, federal statutes and regulations require that all ingredients added to a food product for their functional effect to be listed in descending order of predominance. *See* 21 U.S.C. § 343(i); 21 C.F.R. §§ 101.2, 101.4, 101.100(a)(3)(ii)(c). Failure to list an ingredient, or listing ingredients which are not contained in a product, shall render a food misbranded and therefore its sale will be deemed unlawful. 21 U.S.C. §§ 343(a), 331(a).   The above laws, and all regulations enacted pursuant thereto, are incorporated into California's Sherman Law.   Thus, a violation of federal food labeling laws is an independent violation of California law and actionable as such.

44.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

45.     Plaintiff and Class Members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

**CLASS ACTION ALLEGATIONS**

46.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Fed. R. Civ. P. on behalf of the class and subclass ("the Classes"). The Classes are defined as follows:

1. **National Class:**  All persons in the United States who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

2. **California Subclass:**   All persons in the State of California who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

47.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case, any member of the judge's immediate family, and the courtroom staff.

48.     The Classes are so numerous that joinder of all members is impracticable.  On information and belief, the Classes have more than 10,000 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

49.     There are numerous questions of law and fact common to Plaintiff and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.     The true nature of the ingredients in the Products;

b.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c.     Whether Defendants' actions violate California's Unfair Competition Law, Business and Professions Code §17200, *et seq.* (the "UCL");

d.     Whether Defendants' actions violate California's False Advertising Law, Business and Professions Code §17500, *et seq.* (the "FAL");

e.     Whether Defendants' actions violate California's Consumers Legal Remedies Act, Civil Code §1750, *et seq.* (the "CLRA");

CLASS ACTION COMPLAINT

f.       Whether Defendants were Unjustly Enriched at the expense of the Plaintiff and Class Members; and

g.       Whether Defendants Breached an Express Warranty to Plaintiff.

50.     Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

51.     Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained competent and capable attorneys with significant experience and complex and class action litigation, including consumer class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Classes.

52.     Defendants have engaged in a common course of conduct toward Plaintiff and members of the Classes.  The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

53.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is necessary to compel Defendants to keep such adulterated and misbranded products out of the market and to compensate those who have mislead into purchase of the Product.  The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because Defendants acted or failed to act on grounds generally applicable to the Classes.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

54.     Defendants have acted on grounds generally applicable to the Classes, thereby making

13

CLASS ACTION COMPLAINT

final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class wide basis.

## FIRST CAUSE OF ACTION

**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.***

**(On Behalf of the California Subclass Members)**

55.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

56.     Plaintiff and each member of the Class is a "consumer" as that term is defined by Cal. Civ. Code § 1761(d).

57.     The Products are "goods" as that term is defined by Cal. Civ. Code § 1761(a).

58.     Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

59.     Plaintiff's purchase of the Products are  "transactions" as defined by Cal. Civ. Code § 1761(e).

60.     Plaintiff and members of the Class are consumers who purchased the Products for personal use within the applicable statute of limitations period.

61.     Plaintiff has standing to pursue this cause of action because Plaintiffs have suffered injury-in-fact and has lost money or property as a result of Defendants' actions as set forth here.

62.     Plaintiff and Class members purchased the Products in reliance on Defendants' labeling and marketing claims.

63.     Defendants' practices constitute violations of Cal. Civ. Code § 1770 in at least the following respects:

a.      in violation of §1770(a)(2), Defendants misrepresented the source of the Products (containing L-Arginine, Taurine, and L-Glutamine when they did not);

b.      in violation of  §1770(a)(5), Defendants represented that the Products have characteristics, ingredients, and benefits (containing L-Arginine, Taurine, and L-Glutamine) which they do not have (because they do not contain these free-form amino acids);

c.      in violation of §1770(a)(7), Defendants represented that the Products are of a particular standard, quality or grade (containing L-Arginine, Taurine, and L-Glutamine) when they are of another (do not contain these free-form amino acids);

d.     in violation of §1770(a)(9), Defendants have advertised the Products (containing L-Arginine, Taurine, and L-Glutamine) with the intent not to sell them as advertised (not containing these free-form amino acids); and

e.     in violation of §1770(a)(16), Defendants represented that the Products have been supplied in accordance with previous representations (containing L-Arginine, Taurine, and L-Glutamine), when they were not (not containing these free-form amino acids).

64.     Defendants knew or should have known that their representations of fact are material and likely to mislead consumers.

65.     Defendants' practices, acts, and course of conduct in marketing and selling the Products are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff, members of the Class would not have purchased the Products had they known the true nature of the Products.

66.     Plaintiff and members of the Class have been directly and proximately damaged by Defendants' actions.

67.     In conjunction with filing this Complaint, Plaintiff's Counsel mailed to Defendants, by certified mail, return receipt requested, the written notice required by Civil Code §1782(a).  Should Defendants fail to respond within thirty days of receipt, Plaintiff will amend this Complaint to seek damages under the CLRA.

68.     Defendants have engaged in, and continue to engage in, business practices in violation of the CLRA by continuing to make false and misleading representations on their labeling of the Products.

69.     These business practices are misleading and/or likely to mislead consumers and should be enjoined.

## SECOND CAUSE OF ACTION

**Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***

**(On Behalf of the California Subclass Members)**

70.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

71.     Plaintiff and the Class have standing to pursue a cause of action under the FAL because

15

Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

72.     Defendants advertised, marketed, and otherwise disseminated misleading information to the public through the product labels.

73.     Defendants continue to disseminate such statements.

74.     Defendants' statements are misleading.

75.     Defendants know that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

76.     Plaintiff and Class members relied on Defendants' marketing and labeling.

77.     Defendants' actions violate the FAL.

78.     As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class members who paid for the Products. Therefore, Defendants have been unjustly enriched.

79.     Plaintiff and Class members seek injunctive relief, restitution, and disgorgement of Defendants' ill-gotten gains as provided for by Cal. Bus. & Prof. Code §17535.

80.     Plaintiff and Class members seek injunctive relief to compel Defendants from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

**THIRD CAUSE OF ACTION**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On Behalf of the California Subclass Members)**

81.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

82.     Plaintiff and the Class have standing to pursue a cause of action for unfair competition under the UCL because Plaintiff and members of the Class have suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

83.     Defendants' conduct is unfair in that it in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendants' conduct

CLASS ACTION COMPLAINT

outweighs any legitimate benefit Defendant derived from the conduct.  Defendants' conduct undermines and violates the stated spirit and policies underlying the CLRA, FAL, and federal laws and regulations as alleged herein.

84.     Defendants' conduct is unlawful in that it violates California's Sherman Food Drug & Cosmetic Act, the FAL, and the CLRA, and have failed to properly label the Products in accordance with 21 C.F.R. 101, *et seq.*

85.     Defendants' actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendants' representations and omissions.

86.     Defendants' actions have caused economic injury to Plaintiffs and Class members.  Plaintiff and Class members would not have purchased the Products had they known the true nature of the Products.

87.     Pursuant to Bus. & Prof. Code §17203, Plaintiff and Class members seek an injunction enjoining Defendants from continuing to market, advertise, and sell the Products without first complying with federal and state law and to prevent Defendants from continuing to engage in unfair competition or any other act prohibited by law.

88.     Plaintiff and Class members also seek an order requiring Defendants to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members as permitted by Bus. & Prof. Code §17203.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Classes)

89.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

90.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Products.

91.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers,

CLASS ACTION COMPLAINT

which caused injuries to Plaintiff and Class Members because they would have not purchased the Products, or would not have paid as much for them, if the true facts would have been known.

92.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of the Classes)

94.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

95.     Plaintiff and each member of the Classes formed a contract with Defendants at the time Plaintiff and the other Class members purchased the Products.  The terms of the contract includes the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, as described above.  This labeling, marketing, and advertising constituted express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Classes and Defendants.

96.     Defendants purport through its advertising, labeling, marketing, and packaging to create an express warranty that the Products contained specific amounts and effects of the "Glutamine" and "NO" Complexes.

97.     Plaintiff and the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Products.

98.     Defendants breached express warranties about the Products and their qualities because Defendants' statements about the Products were false and the Products do not conform to Defendants' affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and what the Products did and did not contain.

99.     As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

## **PRAYER FOR RELIEF**

Plaintiff requests the following relief:

A.      Certification of the proposed National Class;

B.      Certification of the proposed California Subclass;

C.      Appointment of Plaintiff as class representative;

D.      Appointment of the undersigned counsel as counsel for the Classes;

E.      A declaration that Defendants' actions complained of herein violate the California consumer protection statutes;

F.      A declaration that Defendants were unjustly enriched;

G.      A declaration that Defendants breached an express warranty to Plaintiff;

H.      An order enjoining Defendants from engaging in the unlawful conduct set forth herein;

I.      An order compelling Defendants to conduct corrective advertising;

J.      An order requiring Defendants to make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained from Plaintiff and Class members;

K.      Damages in the amount of the purchase price of the Products and any consequential damages resulting from the purchases by the Plaintiff and Class members.

L.      An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

M.      Leave to amend this Complaint to conform to the evidence presented at trial; and

N.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

CLASS ACTION COMPLAINT

1

**<u>JURY DEMAND</u>**

2

Plaintiff demands a trial by jury for all issues so triable.

3

4    Dated:  May 14, 2015                    Respectfully submitted,

5                                            **AHDOOT & WOLFSON, PC**

6

7                                            Tina Wolfson

8                                            1016 Palm Avenue
                                             West Hollywood, CA 90069

9                                            Tel: (310) 474-9111
                                             Fax: (310) 474-8585

10                                           Email: twolfson@ahdootwolfson.com

11                                           Nick Suciu III (*Pro Hac Vice* Application Forthcoming)
                                             **BARBAT, MANSOUR & SUCIU PLLC**

12                                           434 West Alexandrine #101
                                             Detroit, MI 48201

13                                           Tel: (313) 303-3472
                                             Email: nicksuciu@bmslawyers.com

14

15                                           Joseph J. Siprut
                                             **Siprut pc**

16                                           17 North State Street, Suite 1600
                                             Chicago, Illinois 60602

17                                           312.236.0000
                                             Fax: 312.878.1342

18                                           Email: jsiprut@siprut.com

19

20                                           Counsel for Plaintiff, Todd Smith

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Todd Smith ("Plaintiff") in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendants Allmax Nutrition, Inc. and HBS International Corp. ("Defendants") market and distribute their Products for sale to consumers within the County of Fresno and Plaintiff purchased Defendants' products within the County of Fresno, as alleged in the Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 14th day of May, 2015 in West Hollywood, California that the foregoing is true and correct.


_____
Tina Wolfson

CLASS ACTION COMPLAINT