# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLMAX NUTRITION, INC. AND HBS INTERNATIONAL CORP., Canadian corporations,<br><br>Defendants. | Case No. 1:15-cv-00744-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 22, 23, 24, 25)<br><br>TEN DAY DEADLINE |

On October 30, 2015, Defendants Allmax Nutrition, Inc., and HBS International Corp. ("Defendants") filed a motion to dismiss. (ECF No. 22.) Concurrently with their motion to dismiss, Defendants filed a request for judicial notice. (ECF No. 23.) Plaintiff Todd Smith ("Plaintiff") filed an opposition on November 30, 2015. (ECF No. 24.) Defendants filed a reply on December 7, 2015. (ECF No. 25.) Plaintiff and Defendants have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 18, 19.)

The hearing on the motion to dismiss took place on December 16, 2015. Joseph Siprut appeared telephonically on behalf of Plaintiff. Ragesh Tangri appeared telephonically on behalf of Defendants. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

\ \ \

# I.

# BACKGROUND

The operative complaint in this matter is the complaint filed on May 14, 2015. (ECF No. 1.) The complaint names Allmax Nutrition, Inc., ("Allmax") and HBS International Corp. ("HBS") as defendants. This is a consumer class action brought by Plaintiff on behalf of himself and all others similarly situated who purchased the dietary supplement Allmax Nutrition IsoFlex (the "Product") from Defendants. (Compl. at ¶ 1.)

Plaintiff, a resident of California, purchased the Product from the Vitamin Shoppe, a retail store located in Fresno, California. (Compl. at ¶ 3.) Plaintiff alleges that Allmax is a Canadian corporation with its principal place of business in Toronto, Ontario, that supplies bodybuilding and sports nutrition supplements in the United States and Canada. (Compl. at ¶ 4.) Plaintiff alleges that HBS is a Canadian corporation with its principal place of business in Toronto, Ontario, and an office in Carson City, Nevada. (Compl. at ¶ 5.) Plaintiff further alleges that HBS is a wholly-owned subsidiary of Allmax and distributes Allmax's line of products in the United States and Canada for purchase at a variety of retailers. (Compl. at ¶ 5.)

Plaintiff alleges that Defendants designed, manufactured, warranted, advertised and sold the Products throughout the United States, and that Defendants continue to do so. (Compl. at ¶ 11.) Plaintiff alleges that Defendants included added complexes that make false claims to entice consumers to choose the Products over competitors' products in a competitive business environment. (Compl. at ¶ 10.)

Plaintiff alleges that Defendants misled the Plaintiff and Class Members by stating that the Products contain NOS Complex and Glutamine Complex. (Compl. at ¶ 13.) Plaintiff contends that testing of the Product reveals that they do not contain NOS Complex and Glutamine Complex as stated on the label. (Compl. at ¶¶ 13-14.) Since the free-form amino acids in these complexes are not included in the Product, Plaintiff contends that the label claims are false and misleading. (Compl. at ¶¶ 15-19.) Additionally, Plaintiff contends that studies have shown that the ingredients claimed to be in the Product do not produce the benefits claimed on the packaging and the Product is therefore false and misleading. (Compl. at ¶¶ 19-33.)

Plaintiff brings this action individually and as a representative on behalf of a National Class and a California Subclass, which are defined as follows:

> National Class: All persons in the United States who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.
>
> California Subclass: All persons in the State of California who purchased the Products at any time during the four years before the date of filing of this Complaint to the present.

(Compl. at ¶ 46.)

Plaintiff asserts causes of action for (1) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17500, *et seq.*; violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (4) unjust enrichment; and (5) breach of express warranty. (Compl. at ¶¶ 55-99.)

## II.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

Defendants move to dismiss the claims against Defendant Allmax based on Federal Rule of Civil Procedure 12(b)(2) and all claims as to both Defendants pursuant to Federal Rule of Civil Procedure (12)(b)(6).

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has personal jurisdiction over a party. A plaintiff bears the burden of establishing that jurisdiction is proper when a defendant files a motion to dismiss for lack of personal jurisdiction. See Marvix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Questions of personal jurisdiction ultimately turn on concepts of due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment, 326 U.S. 310, 315 (1945) (internal quotations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

"Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)[.]" Bruton v. Gerber Products Co., 961 F.Supp.2d 1062, 1076 (N.D. Cal. 2013). Federal Rule of Civil Procedure 9 provides that to plead fraud or mistake, a party "must state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b). This requires a plaintiff to plead with "more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and citations omitted). While fraud is not a necessary element of a claim under the CLRA or UCL, a claim that a defendant engaged in a unified course of fraudulent conduct is grounded in fraud and the complaint as a whole must satisfy the particularity pleading requirement of Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1123 (9th Cir. 2009); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003).

### III.

### DISCUSSION

In Defendants' motion to dismiss, they assert that the Court does not have personal jurisdiction over Defendant Allmax; Plaintiff fails to state a claim because the claims are preempted by the Federal Food, Drug, and Cosmetic Act (FDCA") and the FDA's regulations; Plaintiff fails to state a claim for unjust enrichment; and Plaintiff fails to state a claim on behalf of a nationwide class for the unjust enrichment and express warranty claims.

///

**A.     Personal Jurisdiction Over Allmax**

Defendants argue that the Court should dismiss Allmax from this action because the Eastern District of California does not have personal jurisdiction over Allmax. In his opposition to Defendants' motion to dismiss, Plaintiff does not argue that the Court has personal jurisdiction over Allmax. Plaintiff asserts in a footnote that "Plaintiff hereby voluntarily dismisses Allmax Nutrition, Inc. as a defendant in this action without prejudice, which makes Defendants' argument that Allmax should be dismissed from this case for lack of personal jurisdiction moot." (ECF No. 24 at 6). However, Plaintiff has failed to file a notice of voluntary dismissal of Defendant Allmax under Rule 41(a). Therefore, as Plaintiffs have not actually filed a notice of voluntary dismissal, the matter is not moot. The Court will decide Defendant's motion to dismiss for lack of personal jurisdiction over Allmax and will consider Plaintiff's response in the footnote in the opposition to the motion to dismiss in its analysis.

The Court notes that Plaintiff did not file an opposition to the motion to dismiss on this claim, so the motion to dismiss Allmax for lack of personal jurisdiction is unopposed. As it is Plaintiff's burden to set forth personal jurisdiction, the Court finds that Allmax should be dismissed for lack of personal jurisdiction. The only question before the Court on this claim is whether the dismissal is with prejudice or without prejudice. Defendants contend that the Court should dismiss Allmax with prejudice.

Defendants cite to <u>Watson v. Cty. of Santa Clara</u>, No. C-06-04029 RMW, 2009 WL 817387, at *4 (N.D. Cal. Mar. 26, 2009), for the proposition that when a plaintiff indicates that they are dismissing claims against a certain party, but do not file the request for dismissal of the claims at the time the motion is heard, the Court should interpret that as a notice of non-opposition, and grant the motions to dismiss with prejudice based on failure to oppose the motion to dismiss. The Court notes that in <u>Watson</u>, the Northern District of California dismissed the claims with prejudice against two defendants, but the Court did not indicate on the grounds upon which the motion to dismiss was based. <u>Watson</u>, 2009 WL 817387, at *4.

Dismissal by a court is governed by Rule 41(b) of the Federal Rules of Civil Procedure, which provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

In this case, Plaintiff has stated that he is dismissing Allmax without prejudice. As this is a motion to dismiss based on lack of personal jurisdiction, Rule 41(b) provides that a dismissal would not operate as an adjudication on the merits. Therefore, a dismissal for lack of personal jurisdiction is not a dismissal on the merits and is without prejudice to plaintiff seeking relief in another forum in which the defendant is subject to personal jurisdiction. See Fed. R. Civ. P. 41(b); Grigsby v. CMI Corp., 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (dismissal for lack of personal jurisdiction must be "without prejudice"). No other factors have been articulated by Defendant that would justify dismissing this action against Defendant Allmax with prejudice.

Accordingly, Defendant Allmax is dismissed without prejudice pursuant to Rule 41(b) for lack of personal jurisdiction. The remainder of the Court's order will refer to the remaining defendant, HBS International Corp ("Defendant").

**B.      Preemption**

Defendant argues that all of Plaintiff's claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the claims are preempted by FDA regulations. Plaintiff makes two principal allegations against Defendant: (1) the IsoFlex label is misleading because the product does not actually contain certain ingredients listed on the label ("missing ingredient claim"); and (2) the IsoFlex label is misleading because it makes false claims of the efficacy of glutamine by stating "Free-Form L-Glutamine Designed to improve recovery and immune support" ("recovery and immune support claim"). Defendant contends that Plaintiff's scientific testing on a single sample of IsoFlex is insufficient to meet FDA regulations for the missing ingredient claim. Defendant also asserts that the articles to which Plaintiff cites in the complaint provide "competent and reliable scientific evidence" to show that glutamine supplementation is beneficial to muscle recovery and immune response, and therefore, the FDA regulations are satisfied. Defendant argues that any attempt to proceed on the recovery and immune support

claim is preempted because it would be an attempt to impose a different standard than the one set forth in the FDA regulations.

Under the Supremacy Clause in the Constitution, state laws that conflict with federal law are without effect. Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008) ("Article VI, cl. 2, of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; ... any Thing in the Constitution of Laws of any state to the Contrary notwithstanding.' "). The Federal Government, acting within the authority it possesses under the Constitution, is empowered to preempt state laws to the extent it is believed that such an action is necessary to achieve its purposes. See New York v. FCC, 486 U.S. 57, 63–64 (1988). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).

In an area where there has not been a history of significant federal presence, we begin with the presumption that state regulations "were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." United States v. Locke, 529 U.S. 89, 108 (2000); Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 757 (9th Cir. 2015). "In light of the historical primacy of state regulation of matters of health and safety, courts can assume that state and local regulation related to such matters can normally coexist with federal regulations." Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1118 (N.D. Cal. 2010) (internal punctuation and citations omitted).

"The [FDCA] governs the labeling of food, drugs, cosmetic products and medical devices." Lilly v. ConAgra Foods, Inc., 743 F.3d 662, 664 (9th Cir. 2014). Section 331 of the Act expressly prohibits the misbranding of food in interstate commerce, see 21 U.S.C. § 331(a)-(c), (k), and Section 343 sets forth conditions under which food is considered "misbranded," see 21 U.S.C. § 343. In general, a food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1); Gustavson v. Wrigley Sales Co., 961 F.Supp.2d 1100, 1116 (N.D. Cal. 2013). "In 1990, Congress amended the FDCA through the passage of the Nutrition

Labeling and Education Act ("NLEA") to "clarify and ... strengthen the Food and Drug Administration's ["FDA"] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." Chacanaca, 752 F. Supp.2d at 1116 (quoting H.R.Rep. No. 101–538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337)). The NLEA specifically states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a)] of the [FDCA]." Chacanaca, 752 F. Supp. at 1119 (citing Pub.L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364).

Under the FDCA, the FDA is required to "establish[ ] uniform food labeling requirements," Lilly, 743 F.3d at 664–65, and states are prohibited from imposing " 'any requirement for the labeling of food that is not identical to' the federal requirements[,]" id. at 664–65 (quoting 21 U.S.C. § 343–1(a)(5)); see Bruton, 961 F.Supp.2d at 1079. "The phrase 'not identical to' means 'that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] ... [a]re not imposed by or contained in the applicable [federal regulation] ... or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation].' " Lilly, 743 F.3d at 665 (quoting 21 C.F.R. § 100.1(c)(4); ellipses and alterations in original). "Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." Chacanaca, 752 F. Supp.2d at 1118.

Through the so-called "Sherman Law," California has formally adopted the federal labeling requirements as its own. See Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The state "has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations." Bruton, 961 F.Supp.2d at 1080 (citing Cal. Health & Safety Code § 110670, which provides that "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in [the FDCA]").

1    California's "Sherman Law" makes violations of the FDCA actionable under California
2 law in accordance with the federal statutes and regulations for food labeling laws.  Therefore,
3 Plaintiff's claims do not fail on preemption grounds to the extent that the requirements they seek
4 to impose are identical to those imposed by the FDCA.  Chacanaca, 752 F.Supp.2d at 1119; see
5 also Clancy v. The Bromley Tea Company, 308 F.R.D. 564, 573 (N.D. Cal. 2013) (courts "have
6 repeatedly refused to find preemption" where "a requirement imposed by state law effectively
7 parallels or mirrors the relevant sections of the [FDCA].")

8    1.    Missing Ingredient Claims

9    Here, Defendant does not challenge Plaintiff's ability to bring mislabeling claims, but
10 argues that Plaintiff's claims are preempted to the extent that Plaintiff is attempting to use a
11 different methodology than that set forth in 28 C.F.R. § 101.9(g)(2).  Plaintiff counters that he is
12 not bringing nutrient content claims, but is alleging the failure to include certain ingredients in
13 the product contrary to the representations on the product label.  Plaintiff argues that because the
14 product does not contain the ingredients listed on the label, he does not have to comply with
15 section 101.9 requirements.

16    Defendant's motion rests upon whether Plaintiff's claims are "nutrient content claims."
17 Defendant contends that Plaintiff's claim is a "nutrient content claim," because "nutrient"
18 encompasses amino acids.  Plaintiff contends that the Product is missing several amino acids.
19 (Compl. ¶ 14.)  Specifically, Plaintiff alleges in his complaint:

> The "NOS-Complex" is allegedly supposed to contain the free-form amino acids L-Arginine and L-Taurine. However, after scientific testing, the Products do not contain either of these free-form amino acids.  The "Glutamine Complex" is allegedly supposed to contain the free-form amino acid L-Glutamine. However, after scientific testing, the Products do not contain the free form amino acid L-Glutamine.  See **Exhibit A** [test results].

(Compl. at ¶ 14.)

   Defendant argues that Plaintiff's allegations regarding the testing of the IsoFlex is deficient in two respects: (1) Plaintiff has not alleged that he performed testing in accordance with Section 101.9(g)(2); and (2) the test results attached to the complaint show that only a single sample was tested, in violation of Section 101.9(g)(2).  Section 101.9(g)(2) requires that

9

the "sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot." The methodology described in section 101.9(g)(2) must be used to determine "compliance with the requirements for nutrient content claims." See 21 C.F.R. § 101.13(o) ("Except as provided in § 101.10, compliance with requirements for nutrient content claims in this section and in the regulations in subpart D of this part, will be determined using the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9.").

Two relevant subsections of Section 101.13 for purposes of defining a nutrient content claim are 101.13(b), (c) which provide, in pertinent part, as follows:

> (b) A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter.
>
> (1) An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., "low sodium" or "contains 100 calories."
>
> (c) Information that is required or permitted by § 101.9 or § 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims.

Section 101.36 addresses nutrition labeling of dietary supplements, and requires compliance with § 101.9(g)(1) through (g)(8).

Plaintiff argues that California has codified the FDCA food labeling requirements with the Sherman Law and has given consumers a right of private action under the UCL, CLRA, and FAL, which is an accurate statement. Therefore, it follows that Plaintiff's claims under the UCL, CLRA, and FAL must be conducted according to the testing regulations set forth in the FDCA.

Plaintiff contends that he is not alleging any violations of any provisions of the FDCA that refers to "nutrient content claims." Plaintiff argues that his claims are for violations of the FDCA based on a "failure to include certain ingredients," which he asserts is different from "nutrient content" claims. Plaintiff does not provide any case law to support his proposition that

1  "nutrient content" claims have different testing requirements from "failure to include certain
2  ingredient" claims.

3  Plaintiff asserts that the listing of ingredients that are not contained in a product renders a
4  food misbranded in violation of 21 U.S.C. §§ 343(a), 331(a), and that these sections do not have
5  any testing protocols for FDA enforcement. "Section 331 expressly prohibits the misbranding of
6  food in interstate commerce, while Section 343 sets forth conditions under which food is
7  considered 'misbranded.'" Bruton, 961 F.Supp.2d at 1079 (internal quotation marks and
8  citations omitted). "The FDCA and NLEA expressly preempt any state or local "requirement for
9  nutrition labeling of food that is not identical" to certain FDA requirements, including 21 U.S.C.
10 § 343(q) ("§ 343(q)") and 21 U.S.C. § 343(r) ( "§ 343(r)"). Bruaner v. MusclePharm
11 Corporation, No. CV 14-8869 FMO (AGRx), 2015 WL 4747941, at *6 (C.D. Cal. Aug. 11,
12 2015) (citing 21 U.S.C. §§ 343–1(a)(4) & (5)).

13 Although Plaintiff attempts to differentiate between non-inclusion of claimed ingredients
14 and "nutrient content claims," the Court finds no distinction. In Bruaner, the Central District
15 found that the plaintiff's claim regarding the inclusion or exclusion of amino acids in the
16 ingredients list was a "nutrient content claim because it is a direct statement about the nutrients
17 in the product." Bruaner, 2015 WL 4747941, at *9. Here, it is clear that Plaintiff's claims
18 regarding the absence of L-arginine, L-glutamine, and L-taurine in IsoFlex are claims regarding
19 the inclusion or exclusion of amino acids and are a direct challenge to the nutrients that are in
20 IsoFlex. An amino acid is a "nutrient" that is not required to appear in the Supplement Facts
21 panel of a product. See Food Labeling; Requirements for Nutrient Content Claims, Health
22 Claims, and Statements of Nutritional Support for Dietary Supplements, 62 FR 49859, 49859-60
23 (1997).

24 Plaintiff argues that the methodology mandated by the FDA under 101.9(g) is the
25 standard that the FDA holds a defendant to and § 101.9(g)(2) should not be a pleading
26 requirement for a Plaintiff. Plaintiff asks the Court to follow the Southern District of
27 California's analysis in Clay v. Cytosport, Inc., No. 15-cv-165 L(DHB), 2015 WL 5007884, at
28 *3 (S.D. Cal. Aug. 19, 2015), instead of contrary holdings by several other California federal

courts on this issue.

In Cytosport, the Southern District of California held that the plaintiff had alleged sufficient facts to survive a motion to dismiss even though the sample was not tested with the methodology described in § 101.9(g). Cytosport, 2015 WL 5007884, at *3. To the extent that Plaintiff is arguing that Cytosport found that a plaintiff is not required to comply with the requirements of section 101.9(g)(2), the Court does not read Cytosport as so holding. Cytosport merely held that at the pleading stage, the plaintiff is not required to plead compliance with the testing standards to survive a motion to dismiss. 2015 WL 5007884, at *3 (plaintiffs will have to prove that Defendant did not comply with the testing provisions and defendant's argument that testing is inadequate is not suitable for motion to dismiss).

However, other district courts have found that since the FDA regulation provides that the question of compliance must be determined using the method specified by section 101.9, a state law claim that seeks to establish a violation of such regulation by a different methodology would be preempted. Salazar v. Honest Tea, Inc., 74 F.Supp.3d 1304, 1313 (E.D. Cal. 2014); Mee v. I A Nutrition, Inc., No. C-14-5006 MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015); Vital v. One World Co., No. SACV 12-00314-CJC(MLGx), 2012 U.S. Dist. LEXIS 186203, at *2, 13-18 (C.D. Cal. Nov. 30, 2012); Burke v. Weight Watchers Int'l, Inc., 983 F.Supp.2d 478, 480, 483 (D.N.J. 2013)).

Here, Plaintiff alleges that the IsoFlex label misstates the amount of the nutrients L-arginine, L-glutamine, and L-taurine. (Comp. at ¶ 14.) This allegation under 21 U.S.C. § 343(a) for a failure to include ingredients is connected to the testing requirements of 21 C.F.R. § 101.9(g)(2). All courts that have considered the issue have found that a plaintiff must prove a violation by the methodology specified in section 101.9. The only issue is whether a plaintiff is required to demonstrate compliance with the 12 sample methodology at the pleading stage or, if by failing to allege compliance with this methodology, he is imposing different or more burdensome requirements upon a defendant than those set forth by the FDA.

Plaintiff does not allege that the testing he conducted in support of his claims was done in accordance with the 12-sample method set forth in 21 C.F.R. § 101.9(g)(2) or § 101.36(f)(1). In

12

this case, Plaintiff has included copies of laboratory reports showing the results of the testing conducted on the basis of one sample. Nothing in the reports suggests that the testing was done in accordance with the 12-sample method required by § 101.9(g)(2), and Plaintiff concedes that the testing was not done in accordance with § 101.9(g)(2). However, Plaintiff alleges that testing of the sample showed none of the ingredients were present in the sample.

To the extent that other courts have found that supporting a complaint with test results that do not show compliance with the 12 sample methodology implicates preemption, this Court disagrees. Plaintiff does not allege in the complaint that a different methodology is sufficient to prove his claim, but attaches the results of the testing conducted to support his allegations that the Product does not contain the listed ingredients. Rule 8 requires a plaintiff to state sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Based upon the allegations in the complaint, the Court can plausibly infer that tests conducted in compliance with the 12 sample methodology would support Plaintiff's allegations that the Product is mislabeled.

Plaintiff has not pled a different methodology that would impose a different or more burdensome requirement upon a defendant than those set forth by the FDA. Additionally, Defendant does not contend that the allegations in the complaint do not meet the particularity pleading requirement for Rule 9. For these reasons, the Court finds that at the pleading stage Plaintiff has alleged a plausible claim for mislabeling due to the absence of L-arginine, L-glutamine, and L-taurine in IsoFlex. Defendant's motion to dismiss on this ground is denied.[1]

### 2. Recovery and Immune Support Claims

Plaintiff also alleges that the statement that "Glutamine Complex" improves recovery and immunity support is false and misleading. Plaintiff contends that the falsity of the statement is shown by twelve different scientific studies identified in the complaint. Defendant moves to dismiss this claim on the ground that this claim is preempted by FDA regulations, specifically 21

---

[1] The parties are advised that while the Court finds that pleading the 12-sample methodology is not required to survive a motion to dismiss, any adjudication of the claims on the merits other than by the 12-sample methodology as set forth in section 101.9(g) would be preempted by the FDA.

U.S.C. § 343(r)(6)(B).

Subsection 343(a)(1) provides that food is misbranded if the "labeling is false or misleading in any particular." Subsection § 343(r)(6) provides that dietary supplement labels can make so-called "structure/function" claims, but not "disease" claims. A structure/function claim is a statement that

> claims a benefit related to a classic nutrient deficiency disease and discloses the prevalence of such disease in the United States, describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a dietary nutrient or dietary ingredient.

21 U.S.C. § 343(r)(6)(A).

Section 343(r)(6)(B) of Title 21 of the United States Code provides that a statement for a dietary supplement may be made if "the manufacturer of the dietary supplement has substantiation that such statement is truthful and not misleading." Defendant asserts that the determination of "whether a claim is 'truthful and not misleading' invokes the 'competent and reliable scientific evidence' standard, which applies to dietary supplement products through agency guidance promulgated under the Dietary Supplement Health & Education Act of 1994 (DSHEA), Pub. L. No. 103-417, sec. 8, § 413(c)."

The question for preemption is whether Plaintiff attempts to impose a different standard for this claim or if Plaintiff is attempting to show that the claim is not "truthful and not misleading." In the complaint, Plaintiff makes allegations that glutamine does not improve recovery and immune support and cites to twelve studies. (Compl. at ¶¶ 21-33.) Plaintiff pleads facts that support the claim that Defendant's assertions that glutamine complex improves recovery and immunity support are inaccurate or false claims.

However, Defendant argues that these claims are preempted because the articles that Plaintiff cites to in his complaint actually show the requisite "competent and reliable scientific evidence" required to show that a claim is "truthful and not misleading."[2] Defendant claims that

---

[2] Defendant requests that the Court take judicial notice of one of the articles referenced in Plaintiff's complaint. While the Court may incorporate by reference material that is attached to the complaint, as well as "unattached evidence on which the complaint 'necessarily relies' if : (1) the complaint refers to the document; (2) the document

statements in the twelve scientific articles that Plaintiff has incorporated into the complaint actually support IsoFlex's claims that glutamine supplementation is beneficial to both muscle recovery and immune response, and therefore there is "competent and reliable scientific evidence" for the statements regarding recovery and immune support.  Upon review of the sections of the articles that Defendant has cited, Defendant has shown that there is some support in the articles that glutamine improves recovery and immune support, but there is still a factual question at this time as to whether the "truthful and not misleading" standard has been met.

Here, Defendant has moved to dismiss on the ground of preemption.  Plaintiff has stated a plausible violation of the FDCA by alleging facts upon which a claim could be brought, specifically, facts to show that there is not adequate support for the claims regarding recovery and immunity support of glutamine.  The Court finds that deciding whether there is adequate support for the claims is an issue that should be decided in an adjudication on the merits rather than on a motion to dismiss.  Therefore, the Court finds that based on the pleadings, Plaintiff's claim that IsoFlex's label's statement that the "Glutamine Complex" improves recovery and immunity support is not preempted.  Defendant's motion to dismiss on this ground is denied.

### C.   Plaintiff's Claim for Unjust Enrichment

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment cause of action because it is not an independent cause of action and Plaintiff cannot pursue unjust enrichment as a quasi-contract claim because he has also alleged an express warranty in this matter.  Plaintiff responds that the Ninth Circuit has made it clear that unjust enrichment claims are properly plead in addition and alternately to contract claims.

Federal Rule of Civil Procedure 8(d)(2) expressly permits pleading in the alternative: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  Alternative claims may be asserted "regardless of consistency" between theories of liability.  Fed. R. Civ. P.

---

is central to plaintiff's claim; and (3) no party questions the authenticity of the document[,]" United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011), the Court declines to do so here where the issue addressed is more suitable to decision in adjudicating the issue on the merits.

8(d)(3).

The Northern District of California noted that "[d]espite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that 'unjust enrichment is not a cause of action, just a restitution claim.'" Bruton, 961 F.Supp.2d at 1099 (quoting Hill v. Roll Int'l Corp., 195 Cal.App.4th 1295, 1307 (2011)); see also Clancy, 308 F.R.D. at 576 ("unjust enrichment is not a free-standing claim, [and] any additional claims for restitution that Plaintiff could make would be superfluous"). Further, courts find that without an actionable claim a plaintiff cannot recover, and therefore, a party cannot assert a standalone claim for unjust enrichment. Pardini v. Unilever United States, Inc., 961 F.Supp.2d 1048, 1060 (N.D. Cal. 2013).

In Astiana, the Ninth Circuit held that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" 783 F.3d at 762. "Although Rule 8 of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract." In re Facebook Privacy Litig., 791 F.Supp.2d 705, 718 (N.D. Cal. 2011) aff'd, 572 F.App'x 494 (9th Cir. 2014).

In this action, Plaintiff has brought a claim for a breach of an express warranty and unjust enrichment. The Ninth Circuit has instructed that we may construe the unjust enrichment claim as a quasi-contract claim seeking restitution, and at the pleading stage, Plaintiff may allege two inconsistent theories for recovery. However, under California law "there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter."[3] Cheung v. Wells Fargo Bank, N.A., 987 F.Supp.2d 972, 979 (N.D. Cal. 2013); Zepeda v. PayPal, Inc., 777 F.Supp.2d 1215, 1223 (N.D. Cal. 2011); Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co., 715 F.Supp.2d 1079, 1090 (E.D. Cal. 2010); Gerlinger v. Amazon.Com, Inc., 311 F.Supp.2d 838, 856 (N.D. Cal. 2004).

Plaintiff's damages in this action result from his direct purchase of the Product "which, under the California Commercial Code, creates an express contract between the buyer and seller.

---

[3] To the extent that Plaintiff argues that Copart, Inc. v. Sparta Consulting, Inc., No. 2:14-cv-00046-KJM-CKD (E.D. Cal. Sept. 14, 2015), should be followed, the Court declines to do so. In Copart the court only addressed Rule 8, and did not consider whether California would allow both an express and quasi-contract claim to proceed in the action.

16

Gerlinger, 311 F.Supp.2d at 856 (citing Cal. Com. Code §§ 2106(1) & 2204(1)).  Further, Plaintiff is alleging damages based upon a breach of an express warranty which covers the same subject matter.  (Compl. ¶¶ 94-99.)  Therefore, a separate claim in quasi-contract is inappropriate here under California law.  Plaintiff's fourth cause of action for unjust enrichment is dismissed without leave to amend.

### D. National Class Allegations

In the complaint, Plaintiff only brings claims on behalf of the national class for unjust enrichment and breach of express warranty under California law.  (Comp. at ¶¶ 89-99.)  Plaintiff seeks to invoke California laws on behalf of a putative nationwide class.  Defendant argues that Plaintiff's claims for California common law warranty and unjust enrichment on behalf of a nationwide class must be dismissed because California laws differ from the laws in other states and each state has an interest in regulating commerce within its own borders.

Plaintiff argues that Defendant's motion to dismiss the nationwide class allegations is really a disguised motion to strike class allegations under Rule 12(f).  Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states:

> **(f)** **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
> **(1)** on its own; or
> **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

However, "[a] Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint or counterclaim." Oracle Corp. v. DrugLogic, Inc., 807 F.Supp.2d 885, 896 (N.D. Cal. 2011) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004)).  Therefore, Defendant's arguments challenge the merits of Plaintiff's nationwide class claims for the express warranty and unjust enrichment claims, and those arguments are properly brought in a motion to dismiss, and not a motion to strike.  Accordingly, the Court reviews Defendant's arguments as a motion to dismiss, and not as a motion to strike.

Plaintiff argues that Defendant has not presented the requisite choice of law analysis for the unjust enrichment and common law express warranty claims, and that any choice of law

analysis on these claims is inappropriate at the motion to dismiss stage, and more appropriate for the class certification stage.

In this instance, Plaintiff has alleged that Defendant is a Canadian corporation with its principal place of business in Canada that maintains an office in Nevada. (Compl. at ¶ 5.) Defendant distributes the Product in the United States and Canada. (Compl. at ¶ 5.) Plaintiff is a California resident and purchased the product in California. (Id. at ¶ 3.) However, Plaintiff's complaint is devoid of any factual allegations from which the Court could plausibly find that California contract law would apply to any individual who purchased the Product outside of California. For this reason, Defendant's motion to dismiss the national class claims is granted with leave to amend.

### E.     Leave to Amend

Generally, leave to amend shall be freely given when justice so requires. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" Id. (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Leave to amend should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. Id. at 1051-52. Therefore, Plaintiff shall be granted leave to amend his complaint to cure the deficiencies identified in this order.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART as follows:

    a. Defendant Allmax's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice;

    b. Defendant's motion to dismiss the unjust enrichment claim is GRANTED and

          cause of action four is DISMISSED without leave to amend;

    c.    Defendant's motion to dismiss the national class claims is GRANTED with leave to amend; and

    d.    Defendant's motion to dismiss is DENIED in all other aspects;

2.    Plaintiff may file an amended complaint within ten days from the date of this order; and

3.    Defendant shall file a responsive pleading within twenty days of the date of this order or the filing of an amended complaint, whichever is later.

IT IS SO ORDERED.

Dated:   **December 23, 2015**

UNITED STATES MAGISTRATE JUDGE